# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID RENTZ, II, CDCR #J-41030,<br><br>                  Plaintiff,<br><br>vs.<br><br>T. BOREM,<br><br>                  Defendant. | Case No.  11cv1623 IEG (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>**(ECF No. 32)** |

      David Rentz, II ("Plaintiff"), currently incarcerated at Calipatria State Prison ("CAL") in Calipatria, California, is proceeding in pro se and *in forma pauperis* ("IFP") in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**I.    Procedural History**

      On July 19, 2011, Plaintiff filed his original Complaint (ECF No. 1). Plaintiff was granted leave to proceed IFP and the Court directed the U.S. Marshal to effect service of process upon Defendant Borem pursuant to 28 U.S.C. § 1915(d) and FED.R.CIV.P. 4(c)(2) (ECF No. 4 at 4-5). Before Defendant Borem appeared in the action, Plaintiff filed a First Amended Complaint ("FAC") (ECF No. 8). Defendant Borem filed a Motion to Dismiss Plaintiff's FAC pursuant to FED.R.CIV.P. 12(b)(6) (ECF No. 16). On May 8, 2012, the Court granted Defendant's Motion to Dismiss and gave Plaintiff leave to file a Second Amended Complaint

(ECF No. 23 at 5). After seeking extensions of time which were granted by the Court, Plaintiff filed his Second Amended Complaint ("SAC") on July 23, 2012 (ECF No. 29).

Defendant has now filed a Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to FED.R.CIV.P. 12(b)(6) (ECF No. 32). Plaintiff has filed an Opposition in Response (ECF No. 36) to which Defendant has filed a Reply (ECF No. 37), and the matter has been submitted on the papers without oral argument pursuant to S.D. CAL. CIVLR 7.1(d)(1).

## II. Defendant's Motion to Dismiss

### A. Defendant's Arguments

Defendant seeks dismissal of Plaintiff's Second Amended Complaint on the grounds that: (1) Plaintiff has failed to state a First Amendment claim; (2) Plaintiff has failed to state an Eighth Amendment claim; and (3) Defendant is entitled to qualified immunity from liability for damages in his individual capacity. (Def.'s Memo of P&As in Supp. of Mot. to Dismiss (ECF No. 32-1) at 3-10).

### B. FED.R.CIV.P. 12(b)(6) Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972). Because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [courts] continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

### C. Application to Plaintiff's Second Amended Complaint

#### 1. First Amendment Free Exercise

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987). The protections of the Free Exercise Clause are triggered when prison officials burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by Shakur*, 514 F.3d at 884-85.

A prison regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a First Amendment challenge, however, if it is "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). In determining whether a prison regulation is reasonably related to a legitimate penological interest, the court considers the following factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Turner*, 482 U.S. at 89-90; *Shakur*, 514 F.3d at 884.

///

Here, Plaintiff alleges that Defendant Borem confiscated his prayer oil which prevented him from being able to practice his religion. (*See* SAC at 4.) As to the first *Turner* factor, Defendant argues that the policy of banning prayer oil was rationally related to a legitimate government interest. (*See* Def's. Memo of P&As in Supp. of Mot. to Dismiss (ECF No. 32-1) at 7.) In support of this argument, Defendant requests that the Court take judicial notice of the Director's Level Appeal Decision to Plaintiff's administrative grievance regarding the confiscation of his prayer oil. (*Id.*) The Court will take judicial notice of Defendant's Exhibit "A," and notes that Plaintiff has attached some of the same documents to his Opposition.

In this Director's Level decision, it is stated that on "February 1, 2010, a committee consisting of Warden L. Small, Associate Hazardous Material Specialist K. Ours and Fire Chief Wietzel determined that religious prayer oils will not be allowed at CAL." (*Id.*, Ex. "A," Director's Level Appeal Decision, Log No. CAL-10-01798, dated March 16, 2011.) This document further indicates that the decision to ban prayer oil was due to a determination by the committee that "religious prayer oils were flammable, and as such, posed a fire and health and safety risk." (*Id.*) While it would seem that the banning of the flammable material would be rationally related to a legitimate penological interest, both parties have submitted a document that would suggest that prison officials reversed their finding and lifted their prayer oil ban prior to the confiscation of Plaintiff's prayer oils.

Both Defendant and Plaintiff have attached to their papers a copy of correspondence from Associate Warden Andersen to another inmate. (*See* Defs.' Ex. "A," (ECF No. 32-2 at 10), Letter from Sheila Andersen to William Harris dated July 12, 2010; *see also* Pl.'s Opp'n (ECF No. 36 at 8.)) In this correspondence it states, in part, "the purchase and distribution of prayer oil was temporarily suspended by Warden Larry Small due to an issue of flammability." (*Id.*) However, Warden Andersen goes on to state "since that time, Warden McEwen and Calipatria staff have reviewed the matter, and find that there is no compelling reason to deny the oils from the vendors that have been approved by the Institution in the past." (*Id.*) Plaintiff alleges that the confiscation of his prayer oil occurred on August 20, 2010, several weeks after CAL prison officials acknowledged there was no legitimate penological reason to ban prayer oil.

Accordingly, based on the allegations and the documents attached to the Defendant's own Motion, the ban on prayer oil due to flammability does not support a finding of a legitimate penological reason for Defendant allegedly confiscating Plaintiff's prayer oil on August 20, 2010. The first *Turner* factor weighs in favor of Plaintiff.

Defendant argues that the second *Turner* factor has been met as Plaintiff "had other means of exercising his religion." (*See* Def's. Memo of P&As in Supp. of Mot. to Dismiss (ECF No. 32-1) at 7.) Specifically, Defendant contend that "Plaintiff has alleged no facts to indicate that he was not free to practice all other tenets in his religion or to engage in all other aspects of religious expression consistent with his religious beliefs." (*Id.*) Plaintiff alleges that without the prayer oil he was "unable to rightfully prepare himself for prayer in the mental and emotional state of being." (SAC at 4.) Plaintiff alleges in his Opposition that his health and safety are at risk because he is unable "to perform a basic element of his purification rites" without the prayer oil. (*See* Pl.'s Opp'n at 6.) Based on the Defendant's own moving papers, it appears there was a total ban on prayer oil and thus, Plaintiff had no access to any prayer oil. Plaintiff has adequately plead facts to indicate that he had no other means available to practice a central tenet of his religious beliefs.

For the third *Turner* factor, Defendants argue that to accommodate Plaintiff's request for prayer oils "would inherently pose [risk of fire and a threat to prison security] to other inmates and to prison staff." (*See* Def's. Memo of P&As in Supp. of Mot. to Dismiss (ECF No. 32-1) at 7.) This argument is completely undermined by the letter Defendants' have asked this Court to take judicial notice of in which Associate Warden Andersen indicated that there was no reason to continue the ban on prayer oil. This letter was dated nearly a month prior to the alleged confiscation of Plaintiff's prayer oil by Defendant Borem. In their moving papers, Defendants maintain that to accommodate the use of prayer oils places a budgetary strain due to the "oversight of all inmates possessing prayer oils and to assure their proper use and storage, as well as to prevent the development of a black-market trade among inmates in such materials." (*Id.* at 7-8.)

/ / /

Again the letter by Associate Warden Andersen undermines this argument. She acknowledges that CAL previous permitted the use of prayer oils prior to the ban and found there was "no compelling reason to deny the oils." (Def.'s Req. for Judicial Notice (ECF No. 32-2) at 10.) There is no reference to administrative costs or black market in this correspondence. Defendant provides no basis for the argument that the use of prayer oil, a practice that was previously allowed, causes an undue budgetary strain. Thus, the third *Turner* factor also weighs in favor of Plaintiff.

Finally, Defendant argues that the fourth *Turner* factors weighs in his favor as "Plaintiff has alleged no alternatives that would address the prison's legitimate penological concerns about the risk of fire, threats to the prison's safety and security, and severe budget constraints." (*See* Def's. Memo of P&As in Supp. of Mot. to Dismiss at 8.) Plaintiff has alleged a complete deprivation of the use of prayer oil. It is not clear to the Court if there was an alternative available to Plaintiff if he was completely deprived of using the prayer oil.

Thus, for all the reasons set forth above, the Court finds that Plaintiff has adequately alleged a First Amendment claim relating to the alleged confiscation of prayer oil. Defendant's Motion to Dismiss Plaintiff's First Amendment claim pursuant to FED.R.CIV.P. 12(b)(6) is **DENIED**.

2. **Eighth Amendment claims**

Defendant moves to dismiss Plaintiff's Eighth Amendment claims on the grounds that he has failed to allege how Defendant Borem was ever "aware of any risk to Plaintiff's health or safety." (*See* Def's. Memo of P&As in Supp. of Mot. to Dismiss at 4.) "Whatever rights one may lose at the prison gates, ... the full protections of the eighth amendment most certainly remain in force. The whole point of the amendment is to protect persons convicted of crimes." *Spain v. Procunier*, 600 F.2d 189, 193-94 (9th Cir. 1979) (citation omitted). The Eighth Amendment, however, is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Rather, the Eighth Amendment proscribes the "unnecessary and wanton infliction of pain,"

which includes those sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. This includes not only physical torture, but any punishment incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958)

To assert an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements: one objective and one subjective. *Farmer*, 511 U.S. at 834; *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities." *Id.* This objective component is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Hoptowit*, 682 F.2d at 1246. In his SAC, Plaintiff simply alleges that Defendant Borem's confiscation of the prayer oil "displayed a callousness indifference to me and my religion." (SAC at 3.) These claims simply do not rise to the level of an Eighth Amendment claim. Thus, Defendant's Motion to Dismiss Plaintiff's Eighth Amendment claims pursuant to FED.R.CIV.P. 12(b)(6) is **GRANTED**.

### 3. **Qualified Immunity**

Defendant also seeks qualified immunity. (*See* Def's. Memo of P&As in Supp. of Mot. to Dismiss at 8-10.) "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has recently held that "while the sequence set forth there is often appropriate, it should no longer be

regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation. *Pearson*, 555 U.S. at 236.

In this case, the Court has found Plaintiff's Eighth Amendment claims fail to state a claim upon which relief can be granted pursuant to FED.R.CIV.P. 12(b)(6). Therefore, it need not further determine whether Defendant Borem is further entitled to qualified immunity as to those purported claims. *Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

However, Plaintiff has alleged sufficient facts, taken in the light most favorable to him, to state a First Amendment claim. Thus, "the next, sequential step is to ask whether [Plaintiff's free exercise rights under the First Amendment] w[ere] clearly established" at the time. *Saucier*, 533 U.S. at 201.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. This does not mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Instead, "in the light of pre-existing law[,] the unlawfulness must be apparent." *Id.* The "salient question" is whether the state of the law at the time gives officials "fair warning" that their conduct is unconstitutional. *Id.* at 740. "This inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 202; *Crowell v. City of Coeur D'Alene*, 339 F.3d 828, 846 (9th Cir. 2003). Indeed, "'[o]fficials can

still be on notice that their conduct violates established law even in novel factual circumstances.'" *Hope*, 536 U.S. at 741. In order to find that the law was clearly established, then, the court "need not find a prior case with identical, or even 'materially similar,' facts." *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1136-37 (9th Cir. 2003) (quoting *Hope,* 536 U.S. at 741). Because qualified immunity is an affirmative defense, however, the burden of proof lies with the party asserting it. *Harlow*, 457 U.S. at 812.

Defendant claims that "a prison policy was in effect at Calipatria State Prison on August 20, 2010, prohibiting inmates from possessing prayer oils." (*See* Def's. Memo of P&As in Supp. of Mot. to Dismiss at 9.) Defendant further argues that he was acting "wholly in compliance with prison regulations and with his duties as an officer" when he confiscated Plaintiff's prayer oils. (*Id.* at 10.)

First, it is not clear in the record provided by both parties that the policy of banning prayer oils was in effect in August of 2010. Defendants provide the letter from Associate Warden Andersen who refers to the ban, while initially implemented in February of 2010, as temporary. (*Id.*, Ex. A.) In addition, Associate Warden Andersen indicates that the new administration at CAL, as of at least July 12, 2010, found "no compelling reason to deny the oils." (*Id.*) In Plaintiff's SAC, he alleges Defendant Borem told him "I run R&R not Sheila Andersen." (SAC at 3.)

Here, Plaintiff's right to practice his religion was clearly established at the time the claims in this action arose. *McElyea*, 833 F.2d at 197 ("The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain security.") In addition, the Court finds that a reasonable office in Defendant Borem's position would have reason to know that his conduct was unlawful.

Thus, while the Court notes "a resolution of the factual issues may well relieve [Defendant] of any liability in this case," *Clement*, 298 F.3d at 906, *Saucier* instructs the Court at this stage of the proceedings to presume the Plaintiff's well-pleaded facts are true. *Saucier*, 533 U.S. at 201. Assuming they are, this Court finds both that Plaintiff has sufficiently alleged

a First Amendment violation as to Defendant Borem and that it would be clear to a reasonable officer in Borem's position that to deny Plaintiff the right to possess prayer oil, in light of only the circumstances as they are currently alleged, would violate clearly established law. *Saucier*, 533 U.S. at 202; *Greene*, 513 F.3d at 988.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiff's First Amendment claim on qualified immunity grounds.

### III.  Conclusion and Order

Based on the foregoing, the Court hereby:

1) **DENIES** Defendant's Motion to Dismiss Plaintiff's First Amendment claims pursuant to FED.R.CIV.P. 12(b)(6);

2) **GRANTS** Defendant's Motion to Dismiss Plaintiff's Eighth Amendment claims pursuant to FED.R.CIV.P. 12(b)(6); and

3) **DENIES** Defendant's Motion to Dismiss Plaintiff's First Amendment claims on qualified immunity grounds.

Defendant shall serve and file an Answer to Plaintiff's remaining First Amendment claims within the time prescribed by FED.R.CIV.P. 12(a)(4)(B).

**IT IS SO ORDERED**.

DATED: December 11, 2012

HON. IRMA E. GONZALEZ
United States District Judge